**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GABRIEL I. PITTMAN | : | CIVIL ACTION |
| v. | : | |
| KENNETH D. KYLER | : | NO. 02-2825 |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS                                             June 26, 2003
UNITED STATES MAGISTRATE JUDGE

Presently before this court is a Petition for Writ of Habeas Corpus filed, *pro se*, pursuant to 28 U.S.C. § 2254. Gabriel Pittman ("Petitioner") currently is incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania. Petitioner seeks habeas relief based on claims that he entered an involuntary and unknowing guilty plea to third degree murder, entered an involuntary and unknowing plea of *nolo contendere* to aggravated assault and received ineffective assistance of counsel. The late Honorable Jay C. Waldman referred this matter to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). For reasons that follow, it is recommended that Petitioner's habeas petition be denied and dismissed without an evidentiary hearing.

**I. BACKGROUND AND PROCEDURAL HISTORY**[1]

On July 6, 1998, before Judge Lawrence J. Brenner, in the Lehigh County Court of Common Pleas, Petitioner pled guilty to third degree murder,[2] recklessly endangering another person[3] and carrying a firearm without a license.[4] He entered a *nolo contendere* plea to the remaining charge of

---
[1] The facts in this background and procedural history were obtained from Petitioner's Petition for Writ of Habeas Corpus, the Commonwealth's Response, inclusive of all exhibits, and the Court of Common Pleas of Lehigh County, Pennsylvania's record.
[2] 18 Pa.S.C.A. § 2502(c).
[3] 18 Pa.C.S.A. § 2705.
[4] 18 Pa.C.S.A. § 6106.

aggravated assault.[5] All charges stem from Plaintiff's involvement in the fatal shooting of Rodney Robinson. *See Commonwealth v. Pittman,* No. 304, mem. op. (Ct. Com. Pl. Leh. Cty. Aug. 19, 1998). Petitioner was sentenced to an aggregate term of twenty-six to fifty-nine years of imprisonment. *See id.* at 112.

On August 31, 1998, Petitioner filed a Motion to Modify Sentence, asserting that his sentence was excessive. *See* Respondent's Brief ("Resp.") at Exh. "D." On September 24, 1998, Judge Brenner denied this motion, *see Commonwealth v. Pittman*, No. 304 mem. op. (Ct. Com. Pl. Leh. Cty. 9/24/98)(order), and, on September 29, 1998, Petitioner appealed the denial to Pennsylvania Superior Court. *See* Resp. at Exh. "F." On July 29, 1999, the Superior Court affirmed Judge Brenner's ruling, *see Commonwealth v. Pittman*, 737 A.2d 272 (Pa. Super. 1999) and, on December 20, 1999, the State Supreme Court denied allowance of appeal. *See Commonwealth v. Pittman*, 747 A.2d 899 (Pa. 1999). On February 28, 2000, Judge Brenner granted Attorney Craig Neely, Esquire's motion to withdraw as counsel of record. *See Commonwealth v. Pittman*, No. 304 mem. op. (Ct. Com. Pl. Leh. Cty. Feb. 28, 2000)(order).

Thereafter, on October 30, 2000, Petitioner filed, *pro se*, a Motion, pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et. seq*, claiming: 1) he was not properly advised of the elements of aggravated assault; 2) the factual basis for the *nolo contendre* plea was inadequate; 3) his guilty pleas were not unknowing and involuntary; 4) prejudicial and biased testimony was improperly considered; 5) trial counsel was ineffective; 6) he was not properly advised of the elements of voluntary or involuntary manslaughter; and 7) testimony from the police officer and the victim's family exceeded the permissible scope under Victim Impact

---

[5] 18 Pa.C.S.A. § 2702(a)(6).

Testimony laws. *See* Resp. at Exh. "J." Judge Brenner appointed Albert Nelthropp, Esq. to represent Petitioner, on October 30, 2000. *See Commonwealth v. Pittman*, No. 304 mem. op. (Ct. Com. Pl. Leh. Cty. Aug. 30, 2000)(order). A counseled, Amended PCRA Petition filed on January 26, 2001, alleged:

1. Trial counsel failed to render effective assistance of counsel in that:

   a. he failed to advise Petitioner the required elements of aggravated assault, specifically that he "knew that the victim was a Police Officer," and that under the circumstances of the case and the factual basis of the *nolo contendere* plea to Count 2, Prosecution failed to establish the necessary facts that show that the Defendant consciously knew that he was either running from or had fired a shot at a Police Officer.

   b. he failed to advise Petitioner [of] the elements of voluntary and involuntary manslaughter.

   c. he failed to advise Petitioner [of] his right to file a motion to suppress due to the fact that his statement taken by the Police after the alleged crime was done while the Defendant was in a state of intoxication and was, therefore, involuntary.

   d. he failed to object to inflammatory, prejudicial and improper material contained in a pre-sentence report.

   e. he inadequately presented mitigating circumstances surrounding the shooting during the sentencing hearing.

   f. he failed to advise Petitioner [of] the defense of justification, especially when there were reports that the victim may have been armed.

   g. he failed to investigate all other witnesses and their testimony and the possible impact on trial.

2. Petitioner's plea was not entered voluntarily or knowingly.

*See* Resp. at Exh. "K." The PCRA court held an evidentiary hearing on February 27, 2001. *See*

*Pittman*, No. 304 at 3 (Ct. Com. Pl. Leh. Cty. Feb. 21, 2001). Petitioner, on March 9, 2001, in a Memorandum of Law in support of his PCRA Petition, additionally suggested that trial counsel was ineffective for a) inducing Petitioner to plead guilty to third degree homicide; b) failing to interview other witnesses who were at the scene; and c) failing to present a motion to suppress. *See* Resp. at Exh. "M." Judge Brenner denied relief, *see Pittman*, No. 304 (Ct. Com. Pl. Leh. Cty. Mar. 12, 2001)(order) and, on March 27, 2001, Petitioner appealed, *pro se*, to Superior Court. *See* Resp. Exh. "O" at 2. The Superior Court affirmed the PCRA court's decisions, on February 15, 2002. *See Pittman*, 797 A.2d 1024 (Pa. Super. 2002).

On June 5, 2002, Petitioner filed the instant Petition for Writ of Habeas Corpus asserting that: trial counsel failed to advise Petitioner the of elements of third degree murder and aggravated assault, rendering his guilty plea to these charges unknowing and involuntary, and counsel was ineffective for not seeking reduction of the level of the third degree murder charges as well as for not advising Petitioner of all the elements of the charges he faced. *See* Petitioner's Brief ("Pet.") at 9-10.

## II. DISCUSSION

A. <u>Exhaustion</u>

It is well-settled that, absent exceptional circumstances, a federal court will not entertain the claims of a habeas corpus petitioner until he has exhausted all available state remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 519 (1982); *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993), *aff'd* 30 F.3d 1488 (3d Cir. 1994), *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Brown v. Cuyler*, 669 F.2d 155, 157 (3d Cir. 1982). The policy behind the total exhaustion doctrine is rooted in our tradition of comity: the state must be given the "initial opportunity to pass upon and correct" alleged violations of a petitioner's constitutional rights. *Picard*, 404 U.S. at 275 (*citing*

*Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)); *see also Tillett v. Freeman*, 868 F.2d 106 (3d Cir. 1989). Traditionally, to exhaust his claims, a petitioner must fairly present the identical claims (on both facts and theory) he wants the federal habeas court to review to all levels of the state judicial system, including the state's highest court. *See Anderson v. Harless*, 459 U.S. 4 (1982), *Gibson v. Scheidmantal*, 805 F.2d 135 (3d Cir. 1986); *Evans v. Ct. Com. Pl.*, 959 F.2d 1227 (3d Cir. 1992)(claim must have been presented to intermediate appellate court, as well as state's highest court); *Brown*, 669 F.2d at 155. However, the Pennsylvania Supreme Court, on May 9, 2000, through the adoption of Rule No. 218 of Judicial Administration, pronounced that convicted criminals need not appeal to the state's highest court to exhaust their federal habeas claims. Since Petitioner's issues all were presented to the State's intermediate court, they are exhausted and appropriate for review. *See Mattis v. Vaughn*, 128 F.Supp.2d 249, 260-61 (E.D.Pa. 2001)(concluding that "principles of deference to the Supreme Court dicta and of comity toward the state courts, which is the basis of the exhaustion doctrine, require us to respect the pronouncement of the Pennsylvania Supreme Court in No. 218."). *Accord, Wenger v. Frank*, 266 F.3d 218 (3d Cir. 2001); *Lambert v. Blackwell*, No. 01-2511, 2003 WL 1718511 at *25 (E.D.Pa. Apr. 1, 2003).

    B. <u>Standard of Review</u>

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States, in *Williams v. Taylor*, 529 U.S. 362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause] a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 1498. The Third Circuit Court, consistent with the *Williams v. Taylor* interpretation, has set forth in *Marino v. Superintendent, SCI-Albion*, 171 F.3d 877 (3rd Cir. 1999), *cert. denied* 528 U.S. 824 (1999) a two tier approach to determining § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *O'Brien* [*v. Dubois*], 145 F.3d [16], 24-25 [(1st Cir. 1998]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application" of Supreme Court precedent; that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. If so, then the petition should be granted.

*Id* at 891. The phrase "clearly established Federal law," as the term is used in Section 2254(d)(1), is restricted "to holdings, as opposed to the dicta of [the United States Supreme Court] decisions as of the time the relevant state-court decision." *Williams*, 529 U.S. at 365. Under the "reasonable application" clause,

> a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.*

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based

6

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2). State factual determinations, presumptively correct, may be rebutted only upon presentation of clear and convincing evidence. 28 U.S.C. § 2254(c)(1).

C. <u>Involuntary and Unknowing Guilty Plea</u>

Petitioner alleges that his guilty plea to third degree murder was involuntary and unknowing because trial counsel failed to discuss and develop reduced levels of sentencing. In support of his claim, Petitioner asserts that since he was intoxicated at the time of the incident, he was entitled to less than third degree murder. *See Pittman*, No. 304 at 107 (Ct. Com. Pl. Leh. Cty. Aug. 19, 2001).

In order for Petitioner to prevail on his claim, he must demonstrate that his guilty plea was made unknowingly or involuntarily. *See Meyers v. Gillis*, 93 F.3d 1147, 1150 (3rd Cir. 1996). Federal law establishes that "a plea of guilty will not be found to be unknowing and involuntary in the absence of proof that the [Petitioner] was not advised of, or did not understand, the direct consequences of his plea." *Parry v. Rosemeyer*, 64 F.3d 110, 114 (1995)(citing *Brady v. U.S.*, 397 U.S. 742, 755, 25 L.Ed. 2d 747, 90 S.Ct. 1463 (1970)(a direct consequence is a consequence that has a "definite, immediate, and largely automatic" effect on the range of the defendant's punishment). The Third Circuit Court of Appeals has held, for purposes of entering a knowing and voluntary guilty plea, that a defendant may enter a valid plea once he understands the consequences of his plea and has been questioned on all required and relevant issues related to the offense while demonstrating full "comprehension and competence" over the proceedings. *U.S. v. Frazier,* 41 Fed.Appx. 579, 580, 2002 WL 1747541 *2 (3rd Cir. 2002)[6]

---

[6]"There was no question about [Petitioner's] competence or comprehension. The District Court questioned [Petitioner] on all required and relevant issues related to his role in the offense, as well as his understanding of the proceedings." *Frazier,* 2002 WL 1747541 at *2.

Furthermore, in a footnote, the Court of Appeals cited as evidence: "The District Court made certain

Herein, Petitioner met with counsel numerous times prior to entering his guilty plea. *See* Resp. at Exh. "L." Trial counsel also provided Petitioner with copies of the relevant criminal statutes and potential defenses to those charges. *See* Resp. at Exh. "B." In addition, trial counsel discussed the potential defenses and justifications as well as claims of voluntary and involuntary manslaughter. *See* Resp. at Exh. "L." Moreover, the elements of third degree murder had been fully explained to him and the court questioned Petitioner at length before accepting his plea to that charge.[7] Finally, Petitioner,

---

[Petitioner] understood the applicable mandatory statutory minimum sentence, addressing him: 'Do you understand that a violation of Title 21, United States Code, 846 charged in the information carries with it a statutory minimum penalty of ten years imprisonment and a maximum penalty of life imprisonment, as well as a four million dollar fine?' Frazier answered 'yes.'"

[7] The Court: All right. Let me ask you this, Mr. Pittman, you indicated to me that you are entering pleas of guilty to Counts 1,3, and 4, and a plea of *nolo contendere* to Count 2, which is the Aggravated. First of all, to those counts and the facts as set forth by the District Attorney, is that what happened?

Mr. Pittman: Yes, sir.

The Court: Is that what you are pleading guilty to?

Mr. Pittman: Yes.

The Court: Let me ask specifically as it goes to this most serious county here, which is Count 3. Did you shoot – with this Taurus semi-automatic, did you shoot Rodney Robinson?

Mr. Pittman: Yes, sir.

The Court: Did you kill Rodney Robinson?

Mr. Pittman: Yes, sir.

The Court: And did you – as to Count 2, the Aggravated Assault, relative to the firing of the handgun and Officer Maurey, is that what you are entering a plea of *nolo contendere* to, as I explained the legal meaning of *nolo contendere*?

Mr. Pittman: Yes, sir.

The Court: Do you have any hesitation here whatsoever relative to this matter? Do you know what you are doing?

Mr. Pittman: Yes.

The Court: You are entering those pleas of guilty then to Counts 1,3,and 4, and *nolo contendere* to Counts 2 in terms as the facts as presented here by the District Attorney and in accordance with the law as I've set forth to you relative to these statutes?

fully aware of the permissible range of punishment, explicitly waived his constitutional rights.[8] Thus, this court finds that Petitioner's plea was both knowing and voluntary.

Moreover, trial court and Superior Court held that Petitioner "ha[d] failed to establish any arguable merit to his allegation that he could be guilty only of a lesser crime [than third degree murder]." *See* Resp. at Exh. "I."[9] Therefore, Superior Court's determination that Petitioner knowingly

---

*Pittman,* No. 304 at 27-28 (Ct. Com. Pl. Leh. Cty. July 6, 1998).

[8] The Court: I previously indicated, and I wish to do so again, that murder in the third degree is a felony of the first degree. Which under our state, relative to murder in the third degree, has a maximum sentence of forty years and/or fifty thousand dollars. That could be both, both the fine as well as the sentence of forty years – maximum forty... and since under the plea agreement, as I've indicated to you before, I could sentence you consecutively you could be sentenced to a maximum sentence of fifty-nine years or ninety-five thousand dollars or both. Do you understand that?

Mr. Pittman: Yes, sir.

*Id.* at 28.

[9] This court finds Petitioner's assertion that he may be entitled to a lesser degree of culpability invalid. Petitioner pleaded guilty, upon which advice of counsel, to third degree murder. His assertions that intoxication would have impacted his degree of culpability is without merit. "The only permissible probative value evidence of intoxication may have in criminal proceedings is where it is relevant to the question of capacity of the actor to have possessed the requisite intent of the crime charged. Where the legislature, in its definition of a crime, has designated a particular state of mind as a material element of the crime, evidence of intoxication becomes relevant of the degree of inebriation has reached that point where the mind was incapable of attaining the state of mind required." *Commonwealth of Pennsylvania v. Pitts,* 404 A.2d 1305, 1307 (Pa. 1979). In Pennsylvania, "murder of the third degree is a killing done with legal malice but without the specific intent to kill;" a third degree charge does not require specific intent because "all other kinds of murder shall be murder in the third degree." *Pitts,* 404 A.2d at 1307; 18 Pa.C.S.A. § 2502(c). Thus, the Court in *Pitts* concluded that "intoxication is not a defense to third degree murder." *Pitts* 404 A.2d at. 1308. As in our case, since third degree murder is not a specific intent crime, Petitioner's claim of intoxication cannot negate any of its elements. Thus, any further dialogue into intoxication is moot.

The Superior Court concluded likewise:
> The facts introduced during the plea colloquy establish that Pittman shot and killed the victim on December 7, 1997. (N.T. Plea Colloquy 7/6/98, at 23-24.) Evidence was referenced during the colloquy that a police officer, Ronald Maury, contended that he observed Pittman holding a gun to the head of the victim, and then observed Pittman shoot the victim. (*Id.* at 24). Officer Maury pursued Pittman as he fled from the scene of the crime. During the pursuit, Pittman shot at the officer, but did not harm him. (*Id.*). After being taken into custody, Pittman admitted to shooting the victim, but did not recall any subsequent events. (*Id.* at 25). Pittman appeared to have been drinking alcohol, and exhibited some degree of intoxication while in police custody. (*Id.*).
>
> The prosecutor presented evidence that Pittman held a gun to the head of another individual, and when the victim tapped Pittman on the shoulder to intervene,

and voluntarily entered a plea of guilty to third degree murder is neither contrary to nor an unreasonable application of clearly established federal law.

D.  Involuntary and Unknowing *Nolo Contendre* Plea

Petitioner also contends that his *nolo contendre* plea to aggravated assault was unknowing and involuntary, because he either was not advised of, or misapprehended the elements of aggravated assault.  The record, however, supports a contrary conclusion. *See Pittman*, No. 304 at 19-22 (Ct. Com. Pl. Leh. Cty. Jul. 6, 1998).  During the guilty plea hearing, the judge himself explained:

> one would commit this offense [aggravated assault] if they would attempt by physical menace to put any officers, [namely a police officer]. . . while in the performance of duty, in fear of eminent serious bodily injury. . .  And in the information in Court 2 it is alleged that by firing a handgun at Officer Ronald Maury, while in the performance of his duty, in an attempt to by physical menace to put him in fear of eminent serious bodily injury.  That's count 2 [aggravated assault].

*See id.* at 20-21.  Furthermore, Petitioner admitted, during his PCRA hearing, that he had been advised of each element of aggravated assault prior to his plea of *nolo contendre*. *See id.* at 45-46.  The Superior Court summarized Petitioner's opportunities to consider the elements of each offense charged

---

> Pittman turned and shot the victim in the head. (*Id*. at 26-27).  During the Plea colloquy with the court, Pittman agreed that the prosecutor's version of the incident was correct. (Id. at 27).  Pittman contends that the discrepancy between these two versions of the event impacts upon his degree of guilt, and renders ineffective any advice to enter a guilty plea to third degree murder.  In effect, Pittman is claiming that the version presented by the prosecutor supports a lesser degree of guilt than third degree murder.
>
> We find the two factual scenarios do not mandate different degrees of guilt regarding the murder charge.  The possibility that Pittman may have turned from holding the gun to the head of another individual, and instead shot the victim, *does not serve to negate any guilt for third degree murder. See* 18 Pa.C.S.A. § 2502.  Therefore, Pittman has failed to establish any arguable merit to his allegation that he could be guilty only of a lesser crime, and fails to establish the ineffectiveness of counsel in inducing the plea.  *See Miller*, supra

*Pittman,* 797 A.2d 1024 at *5-7 (Pa. Super. Ct. 2002)(*emphasis added*).

as follows:

> A review of the record reveals that plea counsel, Attorney Neely, met with Pittman 10 to 15 times to discuss the case. (N.T. PCRA Hearing, 2/27/01, at 36.) Pittman executed a written plea colloquy, and the court also conducted an extensive colloquy with Pittman, in which the elements of the various crimes were explained to him. (N.T. Plea Colloquy, 7/6/98, at 18-21; N.T. PCRA Hearing, 2/27/01, at 44-46.) Further, on cross-examination of Pittman by the Commonwealth during the PCRA hearing the following exchanged occurred:
>
> Q. Okay. You would agree that you were explained each and every element of the four charges that you pled guilty to before you entered the guilty plea that day. Correct?
>
> A. Yes, I was.
>
> (N.T. PCRA Hearing, 2/27/01, at 44.)
>
> We find that the oral plea colloquy and the written plea colloquy reveal that Pittman understood the nature of the charges to which he pled guilty. Therefore, there is no arguable merit to Pittman's claim that counsel ineffectively induced entry of the plea by failing to ensure that Pittman was aware of the elements of the crime.

*Pittman,* 797 A.2d 1024 at *6-7 (Pa. Super. Ct. 2002). The state court, thus, appropriately affirmed the PCRA court's denial of relief on this factually unsupported ground. Hence, its dismissal of Petitioner's claim was neither "contrary to or an unreasonable application" of established federal law and habeas relief should be refused.

E. <u>Ineffective Assistance of Counsel Claims</u>

    1. *Strickland* Standard

Petitioner contends that trial counsel was ineffective for failing to object to or preserve his previously discussed level of culpability and inadequate comprehension of the crime and sentence

claims for appeal. To prevail on this claim, Petitioner must meet the two-pronged federal constitutional standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hess v. Mazurkiewicz*, 135 F.3d 905 (3d Cir. 1998).

First, Petitioner must demonstrate that counsel's performance was so deficient as to fall below an objective standard of "reasonableness under prevailing professional norms." *Id*. at 668. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" granted petitioner by the Sixth Amendment. In assessing an attorney's performance, every effort must be made to "eliminate the distorting effects of hindsight," reconstruct the circumstances of counsel's conduct and evaluate the conduct from counsel's perspective at the time. *Id*. at 689. Furthermore, the court must indulge a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. *See id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (citing *Michel v. La.*, 350 U.S. 91, 101 (1955)).

After having adequately established that counsel's performance was constitutionally deficient, Petitioner must further show that the deficient representation prejudiced the defense. This requires proof that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *Kramm v. U.S.*, WL 705962 at *4 (E.D.Pa. Dec. 2, 1996). In guilty plea cases, to satisfy the "prejudice" requirement under *Strickland*, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52 (1985). If Petitioner fails to satisfy either prong of the *Strickland* standard, his claim necessarily fails rendering inquiry into the remaining prong unnecessary. *See id.* at 697.

2. Failure to Present Evidence to Reduce the Charge Claim

Petitioner asserts that trial counsel should have presented evidence to support a lesser degree of culpability than third degree murder. Petitioner cannot, however, satisfy the first prong of *Strickland*. Trial counsel provided Petitioner with copies of the relevant criminal code, discussed with Petitioner the statutes and available defenses under the facts (an unprovoked shooting), and considered at length the tactical decision to plead guilty to third degree murder in light of aggravating attendant circumstances. *See Pittman*, No. 304 at 16 (Ct. Com. Pl. Leh. Cty. Jul. 18, 1998). In addition, trial counsel interviewed numerous witnesses, none of whom, he concluded, would have been deemed reliable by a jury. *See Pittman*, No. 304 at 67-73 (Ct. Com. Pl. Leh. Cty. Feb. 27, 2001). Clearly then, counsel rendered reasonable and strategic advice for credible reasons. Thus, Petitioner's claim that trial counsel was ineffective is without merit.

Since Petitioner's claim fails the first prong of the *Strickland* standard, it is unnecessary to evaluate whether he was prejudiced by his trial counsel's defense strategy. *Strickland*, 466 U.S. at 697. Nevertheless, Petitioner has not alleged or adduced proof that he would have risked trial if informed of lesser degrees of culpability. Hence, Petitioner was not prejudiced. *Pittman,* 797 A.2d 1024 at *5-7 (Pa. Super. Ct. 2002).

3. Failure of Counsel to Explain Elements of the Crimes Claim

Petitioner also claims that counsel was ineffective for failing to advise him of the elements of the charges. As was discussed *supra*, this claim is factually disproven by the record. Thus, it cannot meet either prong of *Strickland*. Accordingly, this court finds that the state court's determination that counsel was not ineffective is neither contrary to nor an unreasonable application of clearly established federal law.

## **RECOMMENDATION**

AND NOW, this 26th day of June 2003, for the reasons contained in the preceding report, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus pursuant to U.S.C. § 2254 be DENIED without an evidentiary hearing. Petitioner has not demonstrated a substantial violation of any Constitutional right; therefore, there is no probable cause to issue a certificate of appealability.

_____
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE