IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL I. PITTMAN, | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| v. | : | NO. 02-2825 |
| | : | |
| KENNETH D. KYLER, et al., | : | |
| Respondent | : | |

**ANSWER TO PETITIONER'S OBJECTIONS TO THE MAGISTRATE'S**

**REPORT AND RECOMMENDATIONS**

JAMES B. MARTIN, District Attorney of Lehigh County, by DAVID J. MUSSEL, Assistant District Attorney, on behalf of the respondents, respectfully requests that the petitioner's Objections to the Magistrate's Report and Recommendations be denied with prejudice and without hearing. In support thereof, the following is averred:

1. The petitioner in this matter, Gabriel Pittman, claims that during his guilty plea hearing the prosecution presented two, conflicting factual renditions of how the crime occurred, and that the facts supported a lesser degree of guilt than third degree murder. As a result, Pittman alleges that his plea to third degree murder was involuntary and unknowing. Pittman's claims are without merit because the facts introduced by the Commonwealth clearly established the requisite elements of third degree murder and contained no factual discrepancies that would serve to negate any guilt for the crime to which Pittman pled guilty.

2. Petitioner Pittman's second claim is that his *nolo contendere* plea to aggravated assault was unknowing and involuntary because the trial court's colloquy into the nature and elements of aggravated assault was not conducted on the record. Pittman's argument fails because the trial court conducted a thorough, on-the-record colloquy into the requisite elements of aggravated assault during his guilty plea hearing held on July 6, 1998. Moreover, during a subsequent post-conviction proceeding, Pittman admitted that the elements of aggravated assault were fully explained to him prior to the entry of his plea.

STANDARD OF REVIEW

Petitioner's application for Writ of Habeas Corpus is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. §§ 2241-2255. Pursuant to AEDPA, an application for a writ of habeas corpus shall not be granted where a claim was adjudicated on the merits in state court proceedings unless the adjudication resulted in a decision that was "contrary to" or involved an "unreasonable application" of clearly established federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254 (d)(1)(2). AEDPA further establishes a presumption of correctness as to factual determinations made by a state court, and places the burden of rebutting this presumption, by clear and convincing evidence, on the petitioner. 28 U.S.C. § 2254 (e)(1).

The standard of review for habeas petitions was recently addressed by the United States Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000). The <u>Williams</u> Court articulated, "Section 2254 (d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id.* at 412, 120 S.Ct. at 1523. A federal habeas court may grant a writ under the "contrary to" clause of § 2254 (d)(1) if the conclusion of the state court is opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the United States Supreme Court on a set of materially indistinguishable facts. *Id.* at 413, 120 S.Ct. at 1523. A state court's decision may be contrary to a federal court's

conception of how governing law applies without being "diametrically different from, opposite in character or nature from, or mutually opposed to" the governing law. *Id.* at 406, 120 S.Ct. at 1520. To fall under the "contrary to" clause, the state court must apply a rule that *directly contradicts* the governing law set forth by the Supreme Court. *Id.* at 406, 120 S.Ct. at 1519 (emphasis added), *see also* Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir. 1999) (*en banc*), *cert. denied*, 120 S.Ct. 73 (1999) (to obtain relief under the "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; . . . the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome") (emphasis in original).

A plea of guilty entered by one fully aware of the consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats, misrepresentations, or promises that are by their nature improper. Marby v. Johnson, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547 (1984), *quoting* Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472 (1970). Only when it develops that the defendant was not fairly appraised of its consequences can his plea be challenged under the Due Process Clause. Id., citing Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495 (1971).

Viewed in light of AEDPA's standard of review, petitioner's claims provide no basis for federal habeas relief.

ARGUMENT

I.

The petitioner in this matter, Gabriel Pittman, claims that during his guilty plea hearing the prosecution presented a conflicting factual rendition of how the crime occurred, and that the facts supplied by the Commonwealth support a lesser degree of guilt than third degree murder. As a result, Pittman alleges that his plea to third degree murder was involuntary and unknowing. However, a thorough review of the record indicates that the factual basis introduced at the guilty plea hearing was neither inconsistent nor served to negate any guilt for third degree murder.

At the guilty plea hearing, the prosecution's facts indicated that on December 7, 1997, Pittman shot and killed Rodney Robinson. (N.T. Plea Colloquy, 7/6/98, pgs. 23-24). During the hearing, the Commonwealth referenced evidence from Allentown Police Officer Ronald Maury, who observed Pittman holding a gun to the head of Robinson prior to shooting him. *Id*. at p. 24. After being taken into custody, Pittman admitted to shooting the victim, but did not recall any subsequent events. *Id*. at p. 25. He also appeared to have been drinking alcohol, and exhibited some degree of intoxication.[1] *Id*. at p. 25. The prosecution further alleged that prior to shooting Robinson, Pittman had been holding a pistol to the head another individual. *Id*. at pgs. 26-27. While Pittman was doing so, Robinson approached him and tapped him on the shoulder in an attempt to intervene, whereupon Pittman turned and shot Robinson once in the head, killing him. *Id*. Pittman himself agreed with this version of the events. *Id*. at p. 27.

---

[1] It should be noted that Pittman does not assert intoxication as a basis for any relief. *See* Petitioner's Objections to Magistrate's Report and Recommendation at p. 2.

The factual discrepancy alleged by Pittman relates to Officer Maury's observation of him holding a gun to the head of Robinson prior to shooting him, as opposed to holding a gun to the head of another individual prior to turning and killing Robinson. Pittman alleges that it is this distinction that renders his guilty plea unknowing and involuntary. However, the factual scenario presented by the Commonwealth does not mandate a lesser degree of guilt. Moreover, the facts presented were neither conflicting nor inconsistent.

Pittman acknowledged that he had a pistol pointed at someone else prior to turning and shooting Robinson. *Id*. at p. 27. This fact was undisputed by the Commonwealth. Nevertheless, in order to shoot Robinson in the manner alleged, Pittman would obviously have to point the gun at Robinson's head prior to pulling the trigger. Thus, Officer Maury's observation of Pittman pointing the pistol at Robinson's head immediately prior to shooting him would be entirely consistent with what had occurred. The prosecution's election to reference a portion of Officer Maury's observations to produce a more concrete factual rendition in no way taints or contradicts the information submitted to the court. Furthermore, Pittman's criticism of the Commonwealth factual basis would be irrelevant, because either interpretation would support third degree murder. *See* 18 Pa.C.S.A. § 2502. Because the prosecution presented an accurate factual basis to support the charge of third degree murder, Pittman's claim that his guilty plea was unknowing and involuntary is without merit.

Pittman also references a statement contained in the appellate brief submitted by his trial counsel in which counsel comments that, "there was evidence that maybe this was something less than third degree murder." *See* Brief for Appellate at pgs. 10-12.

6

Pittman argues that this statement, standing alone, renders his guilty plea involuntary and unknowing. Apparently, Pittman concludes that this statement establishes that his trial counsel withheld exculpatory information. However, there is absolutely no evidence supporting such a conclusion. In fact, all evidence points to the fact that trial counsel did everything possible to adequately inform Pittman of his options and defenses.

Counsel met with Pittman numerous times, approximately ten to fifteen, prior to entering his plea. (N.T. PCRA Hearing, 2/27/01, p. 36). In addition, counsel discussed potential defenses and justifications, as well as the claims of voluntary and involuntary manslaughter. *See* Resp. Exhibit "L." Counsel also provided Pittman with copies of relevant criminal statutes and defenses to those charges. *See* Resp. Exhibit "B." In summation, there is nothing in the record, or anywhere else, to support Pittman's theory that trial counsel withheld evidence favorable to his defense. Trial counsel's statement offers nothing that would render Pittman's guilty plea involuntary and unknowing.

II.

Petitioner Pittman's second claim is that his *nolo contendre* plea to aggravated assault was unknowing and involuntary because the trial court's colloquy into the nature and elements of aggravated assault was not conducted on the record. Pittman's argument fails because the trial court conducted a thorough, on-the-record colloquy into the requisite elements of aggravated assault during his guilty plea hearing held on July 6, 1998.

On July 6, 1998, Pittman entered a *nolo contendere* plea to, among other charges, aggravated assault. During the guilty plea colloquy, the trial judge explained aggravated assault as follows:

7

> [O]ne would commit this offense if they would attempt by physical menace to put any officers…while in the performance of duty, in fear of imminent serious bodily injury…and in the information in Count 2 it is alleged that by firing a handgun at Officer Ronald Maury, while in the performance of his duty, in an attempt to by physical menace to put him in fear of imminent serious bodily injury.
>
> (N.T. Plea Colloquy, 7/6/98, pgs. 20-21).

Furthermore, during his PCRA hearing, Pittman admitted that he had been advised of each element of aggravated assault. (N.T. PCRA Hearing, 2/27/01, p. 36). Very simply, Pittman pled *nolo contendere* to a factual scenario in which he was said to have fired a handgun at Officer Maury. Pittman now claims, for the first time, that he did not attempt to shoot at Officer Maury. Instead, he claims that he merely fired blindly over his shoulder and that the officer simply happened to be pursuing him at the time.

Pittman was advised of the elements of aggravated assault and was told by the trial judge that the prosecution's factual version was that he fired a handgun at an officer who was performing his duties. After being told this on the record, Pittman still made the decision to plead *nolo contendere*. By entering such a plea, Pittman acknowledged that the prosecution would likely be able to prove that he fired a handgun *at* Officer Maury.

Pittman was not only advised of the elements of aggravated assault on the record, but also acknowledged that he was advised of the elements during his post-conviction proceeding. (N.T. PCRA Hearing, 2/27/01, p. 36). Moreover, the factual basis to which he entered his *nolo contendere* plea established that he fired a handgun at Officer Maury while that officer was in the performance of his duties. Such a factual basis supports the charge of aggravated assault. For the foregoing reasons, Pittman's second claim is likewise without merit.

8

WHEREFORE, the respondents respectfully request that the petitioner's Objections to the Magistrate's Report and Recommendations be denied with prejudice and without hearing.

        Respectfully submitted,

_____
David J. Mussel, Esquire
Assistant District Attorney
Lehigh County District Attorney's Office
455 West Hamilton Street
Allentown, PA 18101
(610) 782-3111