

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GABRIEL I. PITTMAN,
         Petitioner, pro se


    v.                      Re: C.A. No. 02-2825


JAMES T. WYDNER, et al,
         Respondent

# FILED

NOV - 5 2007

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### MOTION TO VACATE JUDGEMENT/ORDER

    Petitioner moves the Court to vacate and set aside the judgement/order made and entered in this action on November 28, 2003, for the following reason:

    1.  The Respondents have allegedly committed a fraud on the court.

    This motion is based upon the affidavit of Gabriel I. Pittman, filed and attached to this motion and upon the attached memorandum of points and authorities upon record and file in this action.


    Dated: October 31, 2007


Gabriel I. Pittman pro se
DT-1470
1000 Follies Road
Dallas, PA 18612
SCI-DALLAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


GABRIEL I. PITTMAN
          Petitioner, pro se


          v.                              Re: Pittman v. Kyler
                                          C.A. No. 02-2825


JAMES T. WYDNER et al.,
          Respondents


MOTION FOR RELIEF FROM JUDGEMENT/ORDER
DENYING HABEAS CORPUS RELIEF
PURSUANT TO FRAUD ON THE COURT


MEMORANDUM


Gabriel I. Pittman, pro se
DT-1470
1000 Follies Road
Dallas, PA 18612
SCI-DALLAS


Dated: October 31, 2007

Procedural history:

Gabriel Pittman, Petitioner, presents his pro se motion for relief pursuant to Fraud on the Court.

On February 27, 2001, A state PCRA evidentiary hearing was convened in the Court of Common Pleas of Lehigh County, Pennsylvania.

On March 12, 2001, the PCRA court denied relief.

The Superior Court of Pennsylvania affirmed the PCRA court's denial of relief. **Com. v. Pittman, No. 978 EDA 2001.**

Timely petition for writ of habeas corpus relief was filed in the U.S. District Court of Pennsylvania for the Eastern District. On November 28, 2003, the District Court issued an order approving and adopting the magistrates report and recommendation to deny relief. **Pittman v. Kyler C.A. No. 02-2825.**

Timely petition for COA was filed in the Third Circuit Court of Appeals. COA was denied on July 16, 2004. Rehearing en banc was denied on August 31, 2004. **Pittman v. Kyler, C.A. No. 04-8394.**

On March 28, 2005, writ of certiorari was denied by the U.S. Supreme Court.

On June 9, 2005, motion for authorization to file second habeas corpus petition was denied. **In re: Pittman, C.A. No. 05-2752.**

Petition for state habeas courpus relief was filed on August 4, 2005, to the Common Pleas Court. Petition was dismissed as untimely PCRA petition.

The Superior Court affirmed the dismissal on July 6, 2005. **Com. v. Pittman, 3202 EDA 2005.**

On August 28, 2006 and dismissed as untimely on October 24, 2006.

The Superior Court affirmed the dismissal on March 26, 2007. **Com. v. Pittman, 3117 EDA 3006.**

On May 15, 2007, Petitioner filed a second motion for authorization to file second federal habeas petition. Motion was

1

denied on June 19, 2007. In re: Pittman C.A. No. 07-2497.

Question Involved:

Was the judgement and order denying original petition for habeas corpus relief obtained by way of fraud on the court, where the commonwealth (Respondents) allegedly presented to the District Court fraudulent representations of evidence/facts from Petitioner's original state PCRA proceedings?

*3*

Argument:

Petitioner asks this Honorable Court to review the instant petition for relief from judgement under the provision of fraud on the court, as a matter of first impression, given the extraordinary circumstances and deprivation of constitutional rights that will be explained.

The District Court enjoys the inherent power to grant relief where the judgement or order is obtained through fraud on the court. **Universal Oil Prods. Co. v. Root Refining Co.**, 66 S.Ct. 1176. No time limits apply. **King v. First American Investigations, Inc.** 287 F.3d 91, 95 (2d. Cir.2002). The court may grant the relief on its own initiative or on motion. Such fraud must be proven by clear and convincing evidence. **Id, King.** To constitute as a fraud on the court, the alleged misconduct must be something more than fraud among the litigants. Instead, the misconduct must be an assault on the integrity of the judicial process, which defiles the court itself or is perpetrated by officers of the court, in such a manner that the impartial system of justice fails to function. **Baltia Air Lines, Inc. v. Transaction management, Inc.** 98 F.3d 640, 642 (D.C. Cir. 1996)(citing bribery of a judge or <u>an attorney's knowing participation in the presentation of perjured testimony.</u>)(<u>emphasis added</u>).

Fraud on the Court:

By provisions of fraud on the court, Petitioner avers relief should be granted from the district court's judgement/order pursuant to **Pittman v. Kyler, C.A. No. 02-2825** entered November, 28, 2003, denying Petitioner habeas corpus relief for the following reason:

During Petitioner's original 2/27/01 state PCRA hearing, amid allegations that his guilty plea to third degree murder was unknowing, unintelligent, and involuntarily entered due to trial counsel's alleged ineffectiveness (violations of state and federal sixth and fourteenth amendment rights), trial counsel testified that he failed to advise Petitioner of the affirmative defense of homicide by misadventure and that this defense could

4

have been presented in a trial situation given the circumstances of the case. (See Exhibit A – N.T. 2/27/01 PCRA hearing, pg. 78, ln. 19-25 and Exhibit B pg. 79, ln. 1 & 2). Furthermore, PCRA counsel submitted to the PCRA court a memorandum of law in support of post-conviction relief specifically outlining the the issue of trial counsel's failure to advise Petitioner of said affirmative defense, and how Petitioner was prejudiced by this ommision. (**Exhibits C-F, pgs. 5-8 of PCRA memorandum**).

On 3/12/01, the PCRA court denied relief and in its opinion, contrary to testimony plainly presented, determined trial counsel was effective and provided Petitioner with all defenses, mischaracterizing the failure to advise of homicide by misadventure as an issue of failing to advise of justification. (**Exhibit G – PCRA court's 3/12/01 opinion at pg. 3, footnote 6; Exhibits H and I, pg. 7-8, footnote 15**).

In response to petitioner's timely request for writ of habeas corpus on the grounds of an involuntary and unknowing guilty plea and trial counsel's ineffectiveness for failure to advise and develop evidence that could have supported a lesser degree of guilt, the Lehigh County district attorney's office (Respondents) allegedly committed fraud on the court by informing the District Court that trial counsel "provided Petitioner with copies of criminal statutes lodged against Petitioner **as well as statutes of potential defenses to the charges.** (**Exhibits J & K – pgs. 14 & 15 of Respondents' response to petition for writ of habeas corpus**).

The magistrate judge relied on this allegedly fraudulent representation of facts when she issued a Report and Recommendation that trial counsel provided effective assistance and that habeas relief should be denied. (**Exhibit L – pg. 8 of magistrate's R & R referencing Respondents' response; Exhibit M – pg. 15 of magistrate's R & R**).

Again, in its answer to Petitioner's objections to the magistrate's R & R, the Respondents continued to assert that "all evidence points to the fact that trial counsel did everything possible to adequately inform Pittman of his options and

defenses" and that counsel "provided Pittman with copies of relevant criminal statutes and defenses to those charges." (Exhibit N - pg. 7 of Respondents' answer to Petitioners objections to magistrate's R & R).

The District Court, in its memorandum denying habeas relief cited the magistrate's R & R, determining that Petitioner's guilty plea was voluntarily entered where trial counsel "provided petitioner with copies of all relevant criminal statutes and potential defenses to those charges.." (Exhibit O - pg. 4 District Judge's 11/28/03 memorandum).

Petitioner avers the Respondents' knowing use of fraudulent representations of facts pertaining to Petitioner's claims of denial of state and Federal sixth and fourteenth amendment rights constitutes fraud on the court. Exhibits A & B should stand as clear and convincing evidence that the Respondents knew that, contrary to its continuous assertions at every stage of the writ of habeas corpus proceedings, trial counsel did not do "everything possible to inform [Petitioner] of his options and defenses". As in Baltia Air Lines, Inc. v. Transaction Management, Inc., 98 F3.d 640, 642, if an attorney's knowing participation in the presentation of perjured testimony can constitute fraud on the court, as a matter of first impression, the Respondents' knowing presentation of fraudulent facts in this instant case should also constitute a fraud on the court. Petitioner avers the Respondents' actions were an assault to the judicial process which defiled the court and was perpetrated by officers of the court in such a manner that the impartial system of justice failed to function; especially where a grave miscarriage of justice against Petitioner was allowed to stand because the court was not truthfully and fully informed of the facts before denying habeas corpus relief.

**Cause and Prejudice:**

Petitioner avers he could not object to the Respondents' allegedly fraudulent actions because of improprieties that occurred during his original 2/27/01 post conviction proceedings,

6

by PCRA counsel and the PCRA court itself, which made it seem that Petitioner's claim was waived or unexhausted for purposes of habeas corpus relief.

First, PCRA counsel erroneously amended Petitioner's PCRA petition to state that "...counsel was ineffective for failing to advise to advise Defendant to avail himself of the defense of justification..." (**Exhibit P - Portion of Petitioner's amended/counseled PCRA petition, #15**), instead of the defense of homicide by misadventure, as requested by Petitioner. However, over objections from the assistant district attorney, the correct issue of homicide by misadventure was allowed to be made part of the testimony during the hearing. (**Exhibits A, B, and C-F**).

Second, having allowed trial counsel to testify to this issue of failing to advise of the defense of homicide by misadventure, the PCRA court denied relief by finding trial counsel advised Petitioner of the defenses of self defense and justification (**Exhibits G-I**). There was no determination made pertaining to the defense of homicide by misadventure.

Informed by state case law that "Specific claims of ineffective assistance on the part of trial counsel which are not enumerated in a counseled post conviction petition are waived on appeal" **Com. v. Pettus, 424 A.2d 1332**, and the PCRA statute itself at **Pa.R.Crim.P. 908 (D)(1)** that, "(D) Upon conclusion of the hearing the judge shall: (1) **determine all material issues raised by defendant's petition...**" (**emphasis added**), Petitioner was led to believe that the failure to advise issue was waived. It wasn't until the August 2006 PCRA proceedings for Petitioner's third PCRA that he was informed by new counsel, in a Finley-letter, that the failure to advise issue was properly on the record and should have been addressed by the original PCRA court (**Exhibit R - pg. 2 of appointed counsel's Finley-letter**).

For the foregoing reasons Petitioner was prejudiced in that he mistakenly believed his issue was waived thereby depriving him

of the opportunity to object to the Respondents' allegedly fraudulent representation of facts to this Honorable Court. Petitioner also avers that the original PCRA court's failure to adjudicate the substantive issue of a properly preserved issue of trial counsel's ineffectiveness rendered the state court proceeding not full and fair, depriving Petitioner of procedural due process.    "The merits of the factual dispute were not resolved in the state court hearing.  The factfinding procedure employed by the State was not adequate to afford a full and fair hearing." **Thompson v. Keohane 116 S.Ct. 457, 463-64 (1995).**

Conclusion:

Wherefore, Petitioner asks this Honorable Court to grant relief from the November 28, 2003 order denying writ of habeas corpus at **Pittman v. Kyler, C.A. 02-2825** and that habeas corpus proceedings be reopened so that the facts of this case can be truthfully and fully presented.


Respectfull submitted


Gabriel I. Pittman, pro se
DT-1470
1000 Follies Road
Dallas, PA 18612
SCI-DALLAS

Dated: October 31, 2007

9

PROOF OF SERVICE AND AFFIDAVIT


I declare under the penalty of perjury that the foregoing is true and correct.  Furthermore, I certify that on this 31ˢᵗ day of October 2007, I hand delivered the foregoing:

**MOTION TO VACATE JUDGEMENT/ORDER**
**AFFIDAVIT TO VACATE JUDGEMENT/ORDER**
**MEMORANDUM OF LAW**

to officials at SCI-Dallas for mailing to the following persons:


United States District Court
for the Eastern District of Pennsylvania
(original and three copies)


James B. Martin
District Attorney
455 W. Hamilton Street
Allentown, PA 18101


Petitioner's signature

1   Cross examination, Mr. Nelthropp.

2                              MR. NELTHROPP: Yes

3

4                    **<u>CROSS EXAMINATION</u>**

5

6   **BY MR. NELTHROPP:**

7   Q.      Mr. Neely, when you first got the case you said

8   that you discussed with Mr. Pittman the defenses that

9   were, could be available, might be available. And you

10  said you discussed with him the involuntary and voluntary

11  homicide, the defenses that could be made, sort of a -- not

12  a full defense, but a half defense of the charge. Did you

13  discuss with him the -- an issue of homicide by

14  misadventure?

15                              MR. SHORE: Objection.

16  A.      I have to admit I don't believe I ever --

17                              THE COURT: Overruled.

18  **BY MR. NELTHROPP:**

19  Q.      You can answer.

20  A.      I have to admit, I don't think that I ever brought

21  up homicide by misadventure.

22  Q.      Okay. And I know that -- that there are some

23  elements in it which the jury may not tend to believe if

24  they believe certain of the facts. But, that would have

25  been a defense that could have been raised in a trial?

Exhibit  EX. A

1    A.     If the case would have made it to trial I

2    suppose it could have been raised.

3    Q.     And now it could have been taken by the jury or it

4    could not have --

5                 MR. SHORE:  Your Honor, I

6    would object just on the basis that this was not raised in

7    his PCRA Petition.  Certainly if he wants to continue

8    asking questions, that's fine.

9                 THE COURT:  I'm going to

10    overrule it at this time.  Go on, Mr. Nelthropp.

11    **BY NELTHROPP:**

12    Q.     And at the time when you discussed with him, did

13    you discuss the issue of jury nullification?

14    A.     I don't think I discussed that either.

15    Q.     Okay.  So that there could be a possibility the jury

16    might believe that a killing took place, but under the

17    circumstances a jury would have an absolute right to find

18    someone not guilty despite the evidence, where a Judge

19    wouldn't be able to do so?

20    A.     Never discussed that.

21    Q.     Okay.  And -- but you did discuss -- third degree,

22    basically was your focus, diminished capacity?

23    A.     That was -- we discussed that a lot because we,

24    like I said earlier, I wanted to -- on a case where we

25    definitely were not going to be pleading to first degree, I

### III.     ARGUMENT

*In order for a petitioner to be eligible for relief under the post conviction relief act the petition must show*

*A:     A VIOLATION OF THE CONSTITUTION OF PENNSYLVANIA, THE LAWS OF THIS COMMONWEALTH OR THE CONSTITUTION OR LAWS OF THE UNITED STATES WHICH, IN THE CIRCUMSTANCES OF THE PARTICULAR CASE SO UNDERMINED THE TRUTH-DETERMINING THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE;*

*B:     INEFFECTIVE ASSISTANCE OF COUNSEL WHICH, IN THE CIRCUMSTANCES OF THE PARTICULAR CASE SO UNDERMINED THE TRUTH DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT COULD HAVE TAKEN PLACE;*

*C.     A PLEA OF GUILTY UNLAWFULLY INDUCED WERE THE CIRCUMSTANCES MAKE IT LIKELY THE INDUCEMENT CAUSED AN INDIVIDUAL TO PLEAD GUILTY;*

*In order to establish ineffective assistance of Counsel claim pursuant to a PCRA, 42 Pa. Section 9543, an appellant must prove that (1) that the underlying claim is of arguable merit; (2) Counsel's action or inaction was not grounded on any reasonable basis designed to effectuate his client's interest; (3) Counsel's omission or commission so undermined the trial that the verdict is unreliable. Commonwealth vs. Szuchon, 534 Pa. 483, 633 A.2d 1098 (1993). The Petitioner argues, in this case, that the defense Counsel did not explain to him the defense of homicide by misadventure or accident but that he*

5     EX. C

merely explained to the Petitioner at the time that his only recourse was murder in the third degree. Murder in the third degree is punishable by a period of imprisonment of no less than twenty (20) to no more than forty- (40) years imprisonment. Homicide by misadventure would be an absolute defense. Involuntary homicide was aggressively pursued either. Defense Counsel pursued adamently the issue of diminished capacity, which was clearly applicable in this case. However, in order to have plea which would be valid it must be done knowningly and intelligently. *Commonwealth vs. Anthony*, 505 Pa. 551 (1984). The Defendant must be fully aware of his options at the time that he enters his guilty plea. A guilty plea basically is a waiver of several rights, which a Defendant has and especially the ancient right to a trial by jury. A waiver is only valid if it is made with knowledge and intelligence. *Commonwealth vs. Carey*, 235 Pa. Super. 366, 340 A.2d 509 (Pa. Super 1975). In order to make a knowing and intelligent waiver the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it. *Commonwealth vs. Starr*, 541 Pa. 564, 581, 665 A.2d 1326, 1335 (1995).

In this case, the Appellant claims that trial Counsel was ineffective for failing to advise him of the right to a defense of homicide by misadventure or accident. Counsel at the PCRA hearing advised the Court that he had not explained to the Defendant that defense or theory. In this case, there was clear evidence that the Defendant did not know how the incident had occurred but could only rely on what others had said since he had no memory of the incident himself. He only knew that a shot had gone off. There were several witnesses other than the Police Officer who all stated that the Defendant had moved abruptly when Rodney Robinson had approached him and that the gun went

*Some even said that the Defendant panicked and the gun went off. At the time of trial, the Defendant only knew that his option was the defense of diminished capacity and that other than that he was facing first degree murder. The Defendant himself stated that he had no idea that there was such a theory as homicide by misadventure. The decision making process leading to knowing guilty plea involved exploring any unable defense, and enter of the pleas made only after all possible defenses have been discussed. A client cannot be expected to understand the significance of facts, which may constitute a defense. Therefore, whenever facts could indicate a defense are brought to a counsel's attention the failure to discuss these facts may cause a client to enter an unknowing plea. Commonwealth vs. Unger, 494 Pa. 592, 432 A.2d 146 (1980). The case of Unger discusses the fact that there was no discussion of an intoxication defense prior to the defendant's entry of his plea.*

*When considering all of the evidence which was available to Counsel and in fact there were scores of witnesses who had seen the incident, coupled with the fact that the Defendant at no time had shown any animosity against Rodney Robinson; that he had not carried a gun with him but that one had been given to him, and that he had been holding a gun to another person's head when Robinson had approached to break-up the fight or altercation, and the fact that the Defendant moved away and the gun went off would indicate a possibility of an accident and that the Defendant had no intention of shooting Rodney Robinson. Also involuntary homicide could have been pursued.*

*The Supreme Court of Pennsylvania has held that where defense counsel did not pursue a diminish capacity defense but instead relied on homicide by misadventure excluding other alternative that this was ineffective of Counsel. Commonwealth vs. Betty*

*Legg*, 551 Pa. 437, 711 A.2d 430 (1998). In this case, it is quite clear that the defense of homicide by misadventure was never suggested as an option nor was the Defendant made aware of that option before he plead guilty to homicide in the third degree.

### ISSUE II

Defendant claims that Counsel was ineffective for failing to interview and other witnesses were at the scene. He claims that there were over hundred witnesses who had seen the scene and that Counsel only relied upon the witnesses that had been interviewed by the Commonwealth. Defense Counsel at the PCRA hearing when on at length discussing witnesses which he had met and which witnesses he felt were credible. Present Counsel would refer the Court to *Commonwealth vs. Petres*, 368 Pa. Super. 372, 534 A.2d 483 (1987).

### ISSUE III

Petitioner alleges that Counsel was ineffective for failing to present a motion to suppress. It is very clear that at the time of his arrest the Defendant was intoxicated. There is dispute as to the severity of his intoxication; however, the psychological reports indicated that he had a severe alcohol abuse problem and there was testimony of many witnesses that he had been drinking heavily that evening. Defendant's own testimony and statement which he did eventually make to the Police show that he did not recall major periods of time and important events of that evening. The Petitioner would allege that a suppression motion should have been filed since it was impossible for the defendant to understand or waive his right or remain silent at the time he was interviewed at 10:00 on December 7, 1997. Petitioner would argue that there was no valid reason why Counsel did not file a motion to suppress with the evidence that he had at hand. Therefore, there

revolve around the Defendant's mental state at the time of the shooting. However, because the Defendant was intoxicated on the evening in question and had no personal recollection of the shooting, the Defendant was unable to assist Attorney Neely in preparing a coherent and reasonable defense other than diminished capacity.[6] Consequently, Attorney Neely explored the Defendant's past and looked into the Defendant's substance abuse and psychological issues.[7]

Also in furtherance of acquiring information that may be utilized and relevant at trial, Attorney Neely obtained all of the police records, the Defendant's school records from North Carolina and the Defendant's College records from North Carolina. Attorney Neely also contacted and met with Beverly Culzak because the Defendant believed that she may be able to provide Attorney Neely with names of people who had information. Unfortunately Ms. Culzak provided Attorney Neely with the same names of people that the Defendant already had furnished to his counsel.[8] Attorney Neely spoke with "Criminal"[9], "D"[10], Debbie the barmaid at the LA Club, Leroy the owner of the LA Club, as well as made further efforts through the community to find other witnesses to the shooting. Attorney Neely found that most people were unwilling to talk with him

two (2) days after he received the appointment from this Court.

[6]    Nevertheless, Attorney Neely explained to the Defendant other defenses such as self defense and justification.

[7]    Attorney Neely prepared a medical release authorization to obtain the Defendant's prior medical records and referred the Defendant to be evaluated by a clinical psychologist, Frank Dattilio, Ph.D.

[8]    The Defendant indicated to this Court that he did not provide Attorney Neely with a list of people who should be interviewed.

[9]    During Attorney Neely's interview with "Criminal," he recounted three (3) different versions of the events. Therefore, Attorney Neely found "Criminal" to be an unreliable witness.

[10]    "D's" version of the event seemed the most credible and reliable. "D" recounted that while "K" and "Q" (Sean Carter) were arguing outside of the LA Club, the Defendant left and obtained a gun from a female friend in a taxi cab. The Defendant then returned to the LA Club and grabbed "Q" in a head lock and put the gun to "Q's" (Sean Carter's) head. In an effort to help de-escalate the fight, the victim, Rodney Robinson, approached the Defendant and

3    EX. G

Commonwealth v. Travaglia, 541 Pa. 108, 118, 661 A.2d 352, 356-357 (1995), U.S. cert

denied, 116 S.Ct. 931 (1996) (citations omitted). Defendant bears the burden of proving

all three prongs of this standard. Id. Furthermore, allegations of ineffective assistance

of counsel in connection with a guilty plea will provide a basis for relief only if the

ineffectiveness caused an involuntary or unknowing plea. Commonwealth v. Owens,

321 Pa. Super. 122, 130, 467 A.2d 1159, 1163 (1983).

With the above standards in mind, we address the Defendant's

contentions. The Defendant avers that Attorney Neely was ineffective for inducing

Defendant to enter a plea of guilty to murder of the third degree, recklessly endangering

another person and firearms not to be carried without a license and to enter a nolo

contendere plea to aggravated assault based on the incorrect belief that a third degree

murder charge was the most likely outcome of a trial. Specifically, the Defendant

claims that Attorney Neely did not provide him with sufficient information concerning

all of his options including manslaughter. We find, however, that there is no factual

basis for such a conclusion.

Attorney Neely thoroughly explained to the Defendant the three (3)

degrees of murder and *manslaughter*,[14] including the elements of each offense. In fact,

Attorney Neely photocopied for the Defendant the Pennsylvania statutes from the

Crimes Code, 18 Pa. C.S.A. §§ 101 et seq., that delineate each degree of homicide and

---

[14]    Attorney Neely testified that he discussed manslaughter with the Defendant and we find his testimony to be credible. In fact, during the hearing conducted on February 27, 2001, the Defendant admitted to this Court that Attorney Neely did discuss manslaughter with him but expressed grave concerns that the Defendant's lack of recollection of the events would not support such a finding.

EX. H

the elements thereof, as well as the possible available defenses.[15]    Furthermore, to assist the Defendant in fully understanding the elements of a third degree murder charge, Attorney Neely explained to the Defendant the difference between a lay person's definition of "malice" and the legal definition of "malice." Attorney Neely explained that the legal definition of "malice" was a hardness of heart and a reckless disregard for human life.  He further explained to the Defendant, using a bell curve for illustrative purposes, what he reasonably believed the most likely results of a trial would be. Although Attorney Neely reasoned that the most likely outcome would be murder in the third degree given the facts as established by the witnesses interviewed, all options were discussed.

Moreover, the record indicates that the Defendant's plea was knowingly and voluntarily entered.  At the time of the Defendant's plea, the Court conducted an extensive colloquy, in which Defendant indicated that he was entering the plea of his own free will and his own choosing.  He stated to the Court that no one had made any threats or promises to induce him to enter his plea.  Consequently, we cannot conclude that Attorney Neely caused an involuntary or unknowing plea.

Next we consider Defendant's allegation that Attorney Neely was ineffective for failing to file a Motion to Suppress the Defendant's statement to the police after he was arrested for the shooting of Rodney Robinson.  Attorney Neely used his expertise and experience to determine that it was not in the Defendant's best interests to file a Motion to Suppress the statement that the Defendant provided to the police.

---

[15]    Although the Defendant asserts that Attorney Neely did not discuss with him the defense of justification, we find this contention to be without merit.  Attorney Neely testified that he thoroughly discussed the defense of justification with the Defendant, but perhaps not using the precise term.  This Court finds the testimony of Attorney Neely to be credible and

EX.  J

In all matters § 2254... tion subsection of the federal habeas statute, relief may granted unless a state court's ... adication on the merits of a claim ... was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. Furthermore, habeas relief shall not be granted unless a fair and reasonable basis existed for the state court's factual findings. See Campbell v. ... vaughn, 209 F. 3d 280 (3d Cir. 2000), cert. denied, 121 S.Ct. 789 (2001). The petitioner bears the burden of showing that a reasonable fact-finder could not have reached the same conclusions based on the evidence presented. Id. Viewed under the above standards of review, the petitioner's claims are meritless, providing no basis for federal habeas relief.

## A. The Petitioner's First Claim, Alleging an Involuntary and Unknowing Guilty Plea to Third Degree Murder, Is Meritless.

Assuming *arguendo* that the merits of petitioner's unexhausted and procedurally defaulted first claim are addressed, this Court should find the claim meritless. In his first claim, the petitioner alleges that his guilty plea to third degree murder was unknowing and involuntary due to trial counsel's inability to reduce the level of the charge. As argued below, this contention is absolutely meritless in light of the evidence presented in the state court.

In order to prevail on the first claim of his habeas corpus petition, petitioner must demonstrate that his guilty plea to third degree murder was unknowing or involuntary for 14th Amendment due process clause purposes. See Meyers v. Gillis, 93 F.3d 1147, 1150 (3d Cir. 1996). The evidence adduced at the PCRA hearing and the record from petitioner's guilty plea belies this claim. The petitioner concedes that trial counsel met with petitioner ten to fifteen times prior to the entry of his guilty plea. See Exhibit L at 36. Trial counsel testified at the PCRA hearing to having met between fifteen and twenty

EX. J

14

times with petitioner before the plea. Id. at 64. Petitioner also executed a written guilty plea colloquy upon which he indicated affirmatively that trial counsel explained the elements of the crimes to which he was pleading guilty. See Exhibit "C".

Trial counsel also indicated that he provided petitioner with copies of the criminal statutes lodged against petitioner as well as statutes of potential defenses to those charges. See Exhibit B at 16. Trial counsel testified that he discussed the defenses of self-defense and justification as well as claims of voluntary and involuntary manslaughter with the petitioner. See Exhibit L at 65. Trial counsel further testified that petitioner agreed with the tactical decision to pursue a plea to third degree murder. Id. at 66.

Trial counsel also conducted an independent investigation into the criminal episode at issue. Trial counsel stated that he interviewed numerous witnesses to the homicide. Id. at 67-73. Trial counsel testified that none of the witnesses provided similar stories and in his estimation none of them would be reliable before a jury. Id. Furthermore, the trial prosecutor read the underlying facts of the charge of third degree murder into the record. See Exhibit B at 23-26. The petitioner responded in the affirmative when questioned by Judge Brenner if the Commonwealth's version of events was correct. Id. at 27.

Petitioner now conveniently claims that he did not knowingly and voluntarily enter a plea of guilty to third degree murder. The record below amply demonstrates the opposite. Petitioner had numerous meetings with his counsel prior to the plea, trial counsel fully investigated and explored with petitioner the likelihood of success of seeking an outcome below third degree murder, and the trial court questioned petitioner at length about the entry of his plea to that charge. The trial court and the Superior Court

EX. K

15

Herein, Petitioner met with counsel numerous times prior to entering his guilty plea. *See* Resp. at Exh. "L." Trial counsel also provided Petitioner with copies of the relevant criminal statutes and potential defenses to those charges. *See* Resp. at Exh. "B." In addition, trial counsel discussed the potential defenses and justifications as well as claims of voluntary and involuntary manslaughter. *See* Resp. at Exh. "L." Moreover, the elements of third degree murder had been fully explained to him and the court questioned Petitioner at length before accepting his plea to that charge.[7] Finally, Petitioner,

---

[Petitioner] understood the applicable mandatory statutory minimum sentence, addressing him: 'Do you understand that a violation of Title 21, United States Code, 846 charged in the information carries with it a statutory minimum penalty of ten years imprisonment and a maximum penalty of life imprisonment, as well as a four million dollar fine?' Frazier answered 'yes.'"

[7] The Court:    All right. Let me ask you this, Mr. Pittman, you indicated to me that you are entering pleas of guilty to Counts 1,3, and 4, and a plea of *nolo contendere* to Count 2, which is the Aggravated. First of all, to those counts and the facts as set forth by the District Attorney, is that what happened?

Mr. Pittman:  Yes, sir.

The Court:    Is that what you are pleading guilty to?

Mr. Pittman:  Yes.

The Court:    Let me ask specifically as it goes to this most serious county here, which is Count 3. Did you shoot – with this Taurus semi-automatic, did you shoot Rodney Robinson?

Mr. Pittman:  Yes, sir.

The Court:    Did you kill Rodney Robinson?

Mr. Pittman:  Yes, sir.

The Court:    And did you  – as to Count 2, the Aggravated Assault, relative to the firing of the handgun and Officer Maurey, is that what you are entering a plea of *nolo contendere* to, as I explained the legal meaning of *nolo contendere*?

Mr. Pittman: Yes, sir.

The Court:    Do you have any hesitation here whatsoever relative to this matter? Do you know what you are doing?

Mr. Pittman: Yes.

The Court:    You are entering those pleas of guilty then to Counts 1,3,and 4, and *nolo contendere* to Counts 2 in terms as the facts as presented here by the District Attorney and in accordance with the law as I've set forth to you relative to these statutes?

EX. L

2. Failure to Present Evidence to Reduce the Charge Claim

Petitioner asserts that trial counsel should have presented evidence to support a lesser degree of culpability than third degree murder. Petitioner cannot, however, satisfy the first prong of *Strickland*. Trial counsel provided Petitioner with copies of the relevant criminal code, discussed with Petitioner the statutes and available defenses under the facts (an unprovoked shooting), and considered at length the tactical decision to plead guilty to third degree murder in light of aggravating attendant circumstances. *See Pittman*, No. 304 at 16 (Ct. Com. Pl. Leh. Cty. Jul. 18, 1998). In addition, trial counsel interviewed numerous witnesses, none of whom, he concluded, would have been deemed reliable by a jury. *See Pittman*, No. 304 at 67-73 (Ct. Com. Pl. Leh. Cty. Feb. 27, 2001). Clearly then, counsel rendered reasonable and strategic advice for credible reasons. Thus, Petitioner's claim that trial counsel was ineffective is without merit.

Since Petitioner's claim fails the first prong of the *Strickland* standard, it is unnecessary to evaluate whether he was prejudiced by his trial counsel's defense strategy. *Strickland*, 466 U.S. at 697. Nevertheless, Petitioner has not alleged or adduced proof that he would have risked trial if informed of lesser degrees of culpability. Hence, Petitioner was not prejudiced. *Pittman*, 797 A.2d 1024 at *5-7 (Pa. Super. Ct. 2002).

3. Failure of Counsel to Explain Elements of the Crimes Claim

Petitioner also claims that counsel was ineffective for failing to advise him of the elements of the charges. As was discussed *supra*, this claim is factually disproven by the record. Thus, it cannot meet either prong of *Strickland*. Accordingly, this court finds that the state court's determination that counsel was not ineffective is neither contrary to nor an unreasonable application of clearly established federal law.

13    EX. M

Pittman argues that this statement, standing alone, renders his guilty plea involuntary and unknowing. Apparently, Pittman concludes that this statement establishes that his trial counsel withheld exculpatory information. However, there is absolutely no evidence supporting such a conclusion. In fact, all evidence points to the fact that trial counsel did everything possible to adequately inform Pittman of his options and defenses.

Counsel met with Pittman numerous times, approximately ten to fifteen, prior to entering his plea. (N.T. PCRA Hearing, 2/27/01, p. 36). In addition, counsel discussed potential defenses and justifications, as well as the claims of voluntary and involuntary manslaughter. *See* Resp. Exhibit "L." Counsel also provided Pittman with copies of relevant criminal statutes and defenses to those charges. *See* Resp. Exhibit "B." In summation, there is nothing in the record, or anywhere else, to support Pittman's theory that trial counsel withheld evidence favorable to his defense. Trial counsel's statement offers nothing that would render Pittman's guilty plea involuntary and unknowing.

II.

Petitioner Pittman's second claim is that his *nolo contendre* plea to aggravated assault was unknowing and involuntary because the trial court's colloquy into the nature and elements of aggravated assault was not conducted on the record. Pittman's argument fails because the trial court conducted a thorough, on-the-record colloquy into the requisite elements of aggravated assault during his guilty plea hearing held on July 6, 1998.

On July 6, 1998, Pittman entered a *nolo contendere* plea to, among other charges, aggravated assault. During the guilty plea colloquy, the trial judge explained aggravated assault as follows:

EX. N

7

than third degree murder.

### (a) Two Distinct and Conflicting Version of Events

Petitioner argues that the prosecutor presented facts showing that prior to shooting the victim, Petitioner had been holding a pistol to the head of another individual and that while Petitioner was doing so, the victim approached him and tapped him on the shoulder in an attempt to intervene and at that point, Petitioner turned and shot him in the head, killing him. Petitioner argues that the prosecutor also presented evidence that, as opposed to holding a gun to the head of another individual prior to turning and shooting the victim, Petitioner was actually holding the gun to the head of the victim.

As a preliminary matter, the Magistrate Judge carefully reviewed the record, including the guilty plea colloquy, and found that Petitioner's guilty plea was knowing and voluntary because it complied with the requirements of a voluntary and knowing plea as established by federal law. ("R&R" at 9). Petitioner had met with counsel numerous times prior to entering his guilty plea, and counsel provided Petitioner with copies of all relevant criminal statutes and potential defenses to those charges and discussed the potential defenses and justifications as well as claims of voluntary and involuntary manslaughter. Id. at 9. In addition, the Magistrate Judge found that Judge Brenner questioned Petitioner at length before accepting his plea to the charge of third degree murder. Id.

In response to the two conflicting version of events claim, the Magistrate Judge relied on the Superior Court's findings that the two different versions of the events did not mandate two different degrees of guilt to the charge of murder and therefore does not negate any element of third degree murder. (R&R at 9-10, n. 9). For the following reasons, the Magistrate Judge's

4

EX. O

b.) That under the circumstances of the particular case and that factual basis of the nolo contendre plea to Count 2 as offered by the Prosecution it failed to establish the necessary facts that show that the Defendant consciously knew that he was either running from or had fired a shot at a Police Officer and that the Prosecutor's factual summary contradicts any conclusion that Defendant knew that he had shot at a police officer;

10. That the Petitioner's plea was not entered voluntarily nor knowingly and, therefore, in violation of the due process of the 14th Amendment and the Constitution of Pennsylvania;

11. That the trial Counsel rendered ineffective assistance in violation of the 6th and 14th Amendments for failing to advise the Defendant of the elements of voluntary and involuntary manslaughter;

12. That the trial Counsel was ineffective for failing to advise the Defendant of his right to file a motion to suppress due to the fact that his statement taken by the Police after the alleged crime was done while the Defendant was in a state of intoxication and was, therefore, involuntary;

13. That Counsel was ineffective for failing to object to inflammatory, prejudicial and improper material contained in the pre-sentence report;

14. That Counsel was ineffective for inadequately presenting mitigating circumstances surrounding the shooting during the sentencing hearing;

15. That Counsel was ineffective for failing to advise the Defendant to avail himself of the Defense of Justification, especially when there were reports that the victim in this case may have been armed;

3

EX. P

CHARLES A. BANTA *Attorney at Law*

451 WEST LINDEN STREET • ALLENTOWN PA 18102 • (610) 821-6919 • FAX (610) 821-1134 • HOME (610) 799-4442

September 24, 2006

Mr. Gabriel Pittman, #DT1470
SCI - Dallas
1000 Follies Road
Dallas, PA 18612

RE:    Commonwealth v. Gabriel Pittman

Dear Mr. Pittman:

I have had an opportunity to review your file, and particularly the docket entries which define the history of your case. I have, on the basis of this review, concluded that your petition was not timely filed. I am writing this letter pursuant to the requirements established in <u>Commonwealth vs. Finley</u>, 379 Pa.Super. 390, 550 A.2d 213 (1988).

A petition for post conviction collateral relief, including a second or subsequent petition, must be filed within one year of the finality of your sentence unless you can plead and prove that it falls within one of the statutory exceptions. Exceptions included in the law are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545.

The one-year time limitation is jurisdictional and a trial court has no power to address the substantive merits of an untimely petition. <u>Commonwealth v. Price</u>, 876 A.2d 988 (Pa.Super.,2005). A judgment becomes final for purposes of the PCRA at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review. <u>Commonwealth</u>

EX. Q

Mr. Gabriel Pittman
RE:    Commonwealth v. Gabriel Pittman
September 24, 2006
PAGE 2

v. Fisher, 582 Pa. 276, 870 A.2d 864 (2005).

Following your plea on July 6, 1998, and sentencing on August 19, 1998, your case was appealed to the Superior Court of Pennsylvania which affirmed the trial court sentence on July 29, 1999. Thereafter, a Petition for Allowance of Appeal was filed and denied on December 20, 1999. No further appeals were filed, so your sentence became final on March 19, 2000, and you had one year from that date, March 19, 2001 to file your PCRA, including a second or subsequent petition. Your most recent petition was filed on August 21, 2006, more than five years beyond the deadline.

You have suggested that the Court's failure to address the issue of homicide by misadventure in its opinion is government interference. The issue of the defense of homicide by misadventure was on the record and should have been addressed. It was PCRA counsel's obligation to raise it either with Judge Brenner or before the Superior Court. Failure to do so was ineffectiveness, but even if such a petition would have merit, the Court of Common Pleas is without jurisdiction to hear a petition filed beyond the deadline.

Unless you have an additional ground that could resurrect the jurisdiction of the court, it must be dismissed as untimely. That being the case, it will be my obligation to file a petition to withdraw as counsel. I will wait ten (10) days before doing so to allow you time to respond. If I do not hear back from you within that time, I will petition to withdraw and will forward a copy of the petition to you. You will have an opportunity to argue your grounds before Judge Brenner. If he agrees with you, he will deny my petition and proceed with a hearing. If he agrees with me, he will grant my petition and allow you to proceed *pro se*.

I look forward to your timely response.

Very truly yours,

CHARLES A. BANTA, ESQUIRE

CAB/cb

EX. R